UNITED STATES of America, Plaintiff-Appellee,

v.

Lonnie Paul STAGGS, Defendant-Appellant.

Nos. 76–1914, 76–2003.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1977.

Decided April 27, 1977.

Rehearing Denied June 29, 1977.

Charles H. Delano, Springfield, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., John C. Carver, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before SWYGERT, SPRECHER and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

In this case the defendant appeals his conviction by a jury for assaulting a federal officer with a deadly weapon in violation of 18 U.S.C. § 111.* We reverse the conviction and remand the case for a new trial.

## I

Defendant Lonnie Paul Staggs was wanted by the United States Marine Corps for desertion. On May 25, 1976, Federal Bureau of Investigation agents James C. Haskell and James E. Quick came to arrest Staggs at his apartment in Edwardsville, Illinois. They were permitted to enter the apartment by Staggs' wife, who told them that Staggs was in the bedroom. According to agent Haskell, he called out to Staggs, and when he received no answer, partially entered the bedroom doorway. He alleged that he observed Staggs standing in the corner and that Staggs was holding a gun with both hands which he pointed at Haskell. Haskell further contended that he jumped back through the doorway in fear and that as he did so Staggs stated that "he wasn't going to go back, and don't come into the bedroom or I'll shoot you."

On the basis of Haskell's allegations, Staggs was indicted on July 15, 1976 for assaulting a federal officer with a deadly weapon in violation of 18 U.S.C. § 111. He was tried before a jury in the district court for the Southern District of Illinois. At

* 18 U.S.C. § 111 provides:
   Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.
   Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

trial his defense was based upon his own account of what had transpired on May 25, 1976. He testified that his wife told him after the agents arrived that they had come to take him away. This conversation took place in the doorway of the bedroom while the agents were waiting in the living room. He then testified that he went into the bedroom to pick up the gun, which was on the nightstand by the bed, and turned with the gun in his right hand when he saw a shadow come into the doorway. He stated that he did not point the gun at Haskell and never had any intention of pointing the gun at Haskell or threatening him. He asserted that he picked up the gun because he was thinking of injuring himself so that he would not be taken back to the Marine Corps.

Staggs was convicted by the jury and sentenced as a youth offender under 18 U.S.C. § 5010(b) to an indefinite term in the custody of the Attorney General. He now appeals his conviction.

## II

■ Defendant argues that the district court committed reversible error by excluding the testimony of Dr. William Sloan, a psychologist who examined defendant. Dr. Sloan offered to testify that defendant was more likely to hurt himself than to direct his aggressions toward others. Dr. Sloan stated, speaking about defendant:

> His impulsive acts are directed more inwardly than outwardly. He does—he does show some rashness but not aggression toward others in the test pattern particularly, and his desire to injure himself or to be injured in order to escape an unpleasant situation is consistent with his rather childish attitude which may be expressed as, if I'm hurt, they'll feel sorry for me and I won't have to do that. It's that kind of a character structure that he has, a personality trait. The tendency, the overwhelming or the burden of the— both the test results and my personal interview, my discussion with him would be in the direction of his not being ag-

gressive or wanting to injure somebody else but rather to have himself to be so—to be put in a condition which would allow him to get out of an unpleasant situation.

The district court excluded this testimony because it did not

> believe it's relevant to the question which really is the assault here. The defendant says he didn't do it. The agent says he did do it. Dr. Sloan says in effect that he's irrational or he's immature and he acts impulsively.

Our analysis of this issue must begin with the Federal Rules of Evidence. Rule 404(a) provides, in pertinent part:

> Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> [e]vidence of a pertinent trait of his character offered by an accused.

Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

"Relevant evidence" is defined in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Dr. Sloan's testimony is evidence of a character trait of the defendant offered to prove that he acted in conformity with that trait in his encounter with Haskell. It is admissible under Rule 404(a) if the character trait in question is "pertinent." Reading Rules 401, 402, and 404(a) together, a character trait can only be "pertinent" if its existence is relevant to the outcome of the case. Accordingly, we must focus our in-

quiry on whether Dr. Sloan's testimony would have had "any tendency to make the existence of any fact that is of consequence" to whether defendant violated section 111 "more probable or less probable than it would be without the evidence." If so, the trial judge erred in excluding it.

In order to decide whether Dr. Sloan's testimony was relevant, we shall first determine the role that the mental state of the defendant plays in prosecutions for assaulting a federal officer under section 111. If section 111 of the Criminal Code is a "general intent" crime, the Government would not need to prove anything about the defendant's state of mind at the time he acted. The only issue would be whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm. This is the standard for the civil tort of assault. *See* W. Prosser, *Handbook of the Law of Torts* § 10, at 41 (4th ed. 1971). On the other hand, if section 111 is a "specific intent" crime, the Government would have to prove that the defendant subjectively intended to put a federal officer in apprehension of bodily harm.

The statutory language gives no clue as to whether specific intent is required. The Supreme Court, however, has recently interpreted the scope of section 111. In *United States v. Feola,* 420 U.S. 671, 684, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court held that a defendant could violate section 111 without being aware that his victim was a federal officer. But in reaching this holding the Court made it clear that specific intent to commit assault is a prerequisite to conviction under the statute. It stated:

> All the statute requires is an intent to assault, not an intent to assault a federal officer. . . . Although the perpetrator of a narcotics "rip-off," such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. . . . We are not to be understood as

implying that the defendant's state of knowledge is never a relevant consideration under § 111. The statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea.* 420 U.S. at 685–87, 95 S.Ct. at 1264.

Therefore, the defendant in this case should not have been convicted unless the Government demonstrated beyond a reasonable doubt that he subjectively intended to put agent Haskell in apprehension of bodily harm. It would not have been enough merely to show that Haskell reasonably was fearful of suffering bodily harm because of the defendant's conduct.

Under this interpretation of section 111, we conclude that Dr. Sloan's testimony was relevant and should have been admitted. The defendant's theory of the case was that he neither intended to threaten nor did threaten Haskell. Dr. Sloan's testimony that the defendant was a person more likely to want to harm himself than to think about directing his aggressions toward others made more probable the truth of defendant's assertion that he harbored no criminal intent during his encounter with Haskell. The jury was entitled to an expert opinion of the defendant's psychological makeup in deciding whether to believe the defendant's story about what he was thinking when Haskell entered the bedroom.

Even if section 111 was a general intent crime, Dr. Sloan's testimony would be relevant because it tended to corroborate the defendant's contention that he never in fact did point the gun at Haskell. If the defendant was not an aggressive person in general, it would be more likely that he was telling the truth when he said he was not aggressive on the occasion in question.

### III

The government contends that even if Dr. Sloan's testimony was relevant it should

have been excluded under Fed.R.Crim.P. 12.2(b). Rule 12.2(b) states:

(b) *Mental Disease or Defect Inconsistent with the Mental Element Required for the Offense Charged.* If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such latter time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

The Government's theory is that, if the testimony was relevant because of the insights it provided into the defendant's psyche, it must also bear "upon the issue of whether he had the mental state required for the offense charged" and therefore falls within the rule. The Government further asserts that since defendant failed to supply the notice that the rule requires, the trial judge would have erred if he had admitted the testimony.

■ There is a good deal of merit to this argument. We agree with the Government that Dr. Sloan's testimony was covered by Rule 12.2(b) and that the Government should have been given notice so that it would have had an opportunity to secure its own expert witness to rebut that testimony. But we do not agree that this fact mandates affirmance of the district court's decision in this case.

Rule 12.2(b) does not specify a remedy for its violation. It is within the discretion of the trial judge whether to exclude evidence covered by the rule that is introduced without the required notice. In this case the trial judge noted that to immediately admit Dr. Sloan's testimony would frustrate the purpose of the rule. He also found that he could not continue the case to permit the

Government to obtain its own expert witness because to do so would violate the defendant's statutory right to a speedy trial. But in excluding the testimony he avoided relying on Rule 12.2(b) and instead based his decision solely on grounds of relevance.

We do not know what the district judge would have done if he had found the testimony to be relevant. The record indicates that he was reluctant to exclude the testimony because of the defendant's failure to comply with Rule 12.2(b). We are convinced that if possible he would have delayed the trial to allow the Government to obtain its own expert rather than imposing the drastic sanction of exclusion. Accordingly, we remand the case for a new trial. On remand the district judge will not face the procedural knot with which he was presented during the first trial. The Government will have the opportunity to secure an expert to rebut Dr. Sloan, and the jury will have the opportunity to hear all of the relevant evidence.

Because of our holding on the issue of Dr. Sloan's testimony, we do not need to reach the other issues that defendant raises.

The judgment of the district court is reversed and the cause is remanded for a new trial.

SPRECHER, Circuit Judge, dissenting.

I respectfully dissent based on the facts set forth in Part III of Judge Swygert's opinion, from which facts I draw different conclusions. I would affirm the judgment.