**UNITED STATES of America, Plaintiff,**

v.

**Samuel BUCHBINDER, Defendant.**

**No. 84 CR 951.**

United States District Court,
N.D. Illinois, E.D.

Aug. 13, 1985.

Anton R. Valukas, U.S. Atty. by Howard Pearl, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Frederick F. Cohn, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is defendant's motion for bond pending appeal of his conviction. Defendant was convicted of ten counts of wire fraud and subsequently sentenced to

six months imprisonment and five years consecutive probation. For the reasons stated below, defendant's motion is denied.

## I. FACTS

Defendant Samuel Buchbinder was charged in an indictment with nine counts of wire fraud in violation of Title 18, United States Code, Section 1343. The jury returned verdicts of guilty on all nine counts.

The wire fraud counts charged that the defendant entered into a scheme to defraud the brokerage firm of Paine, Webber, Jackson & Curtis by giving it bad bank drafts in connection with a commodities trading account. The evidence at trial established that the defendant opened a commodities trading account on September 2, 1982 with $4,600 cash. By the end of the day on September 7, 1982, the defendant had lost all the money he had previously deposited and presented Paine Webber with a $50,000 draft on an account at the Canadian Imperial Bank of Commerce, Nassau, Bahamas (CIBC), to cover his losses. Defendant gave Paine Webber a total of $170,000 in bad bank drafts knowing that there was no money to back the drafts. Additionally, defendant withdrew approximately $40,000 cash from his Paine Webber account based on the bad bank drafts.

In the course of writing the bad bank drafts, defendant not only wrote three false drafts but also made wire transfers of the proceeds of the bad bank drafts from his commodity account to various other cash and equity accounts in his name and his wife's name.

## II. DISCUSSION

■ Under 18 U.S.C. § 3143(b), the defendant bears the burden of proving four conditions before a court may grant bail pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. *United States v. Hall,* 603 F.Supp. 333, 335 (N.D.Ill.1985) (*quoting U.S. v. Miller,* 753 F.2d 19, 24 (3d Cir. 1985).

■ In this circuit, a "substantial question of law or fact" is defined as "a 'close' question or one that very well could be decided the other way." *United States v. Molt,* 758 F.2d 1198, 1200 (7th Cir.1985). *See also United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985); *United States v. Randell,* 761 F.2d 122, 125 (2d Cir.1985). If a court does find that a question raised on appeal is "substantial," it must then consider whether that question is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Randell, supra,* 761 F.2d at 125 (*quoting Miller, supra,* 753 F.2d at 23). As to all of the four conditions for bond pending appeal, the defendant bears the burden of persuasion. *Randell, supra,* 761 F.2d at 125.

In his memoranda in support of the motion for bond pending appeal, defendant argues that two principal issues are "substantial questions" justifying bond under 18 U.S.C. § 3143(b). First, he argues that the Court committed reversible error by excluding psychiatric testimony offered to prove severe depression and consequent compulsive gambling, which would negate his specific intent necessary to commit wire fraud. Second, defendant's counsel prior to and at trial failed to raise the mental condition defense in a timely manner and defendant was thereby denied effective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution.

A. *Exclusion of Psychiatric Testimony*

1. *Failure to Provide Timely Notice Under Rule 12.2(b)*

■ In its order dated April 16, 1985, this Court granted the government's mo-

tion in limine to exclude defendant's proposed defense based on his mental condition. The Court based its decision on the untimeliness of defendant's notice of defense based upon mental condition under Rule 12.2(b) of the Federal Rules of Criminal Procedure. It is undisputed that this notice was filed on March 29, 1985, 86 days after arraignment, 17 days after the third extended deadline for such motion, and 21 days before the scheduled trial date.

Rule 12.2(b) provides as follows:

If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of his guilt, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

This provision relating to the timeliness of a defense noticed under Rule 12.2(b) contains the same language applicable to timely notice of an insanity defense under Rule 12.2(a). In either case, Rule 12.2 contemplates that a defendant who fails to comply with the time requirements waives his right to raise an insanity defense or a defense based upon his mental condition. *United States v. Duggan*, 743 F.2d 59, 80 (2d Cir.1984); *United States v. Veatch*, 647 F.2d 995, 1002–03 (9th Cir.), *modified on other grounds*, 674 F.2d 1217 (1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *United States v. Caplan*, 633 F.2d 534, 539 (9th Cir.1980); *United States v. Winn*, 577 F.2d 86, 89 (9th Cir.1978).

■ A defendant who has allowed his deadline to pass may, in accordance with Rule 12.2, move for permission to make a late filing and the district court may grant such permission "for cause shown." *Duggan, supra*, 743 F.2d at 80. Whether the defendant has demonstrated sufficient "cause" is necessarily a matter for the

district court to evaluate on a case-by-case basis. *Id.* See *United States v. Toner*, 728 F.2d 115, 123 (2d Cir.1984) (Rule 12.-2(a)); *United States v. Veatch, supra*, (Rule 12.2(a)); *United States v. Dill*, 693 F.2d 1012, 1015 (10th Cir.1982) (Rule 12.-2(a)). See also *United States v. Olson*, 576 F.2d 1267, 1273 (8th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978) (Rule 12.2(b)); *United States v. Edwards*, 90 F.R.D. 391 (E.D.Va.1981) (Rule 12.2(b)). "Cause" consists not only of explanation for the belatedness of the party's action, but also of a showing of some merit in the position belatedly to be advanced. *Duggan, supra*, 743 F.2d at 80; *Toner, supra*, 728 F.2d at 123.

Recently, the Seventh Circuit Court of Appeals upheld a district court's denial of defendant's request for an appointed psychiatrist. *United States v. Fountain*, 768 F.2d 790 (7th Cir.1985). In *Fountain*, on the day of trial, the defendant requested the judge to appoint a psychiatrist. The defense was to be self-defense or compulsion, based on the effects of statements made by defendant's victim to defendant. The Seventh Circuit held that the defendant "had given no good reason why his request for a psychiatrist came so very late in the day." *Id.* at 794. In holding that the district court did not abuse its discretion, the Seventh Circuit concluded that: "... since the proposed use of the psychiatrist was sufficiently unusual to require a fuller explanation of why it justified postponing the trial, the judge was not required to grant a continuance in order to follow up this will o' the wisp." *Id.*

■ In the present case, it is clear to the Court that the defendant failed to show "good cause" for his failure to timely notice a defense based on mental condition. Defense counsel requested three extensions for the filing of pretrial motions, which is the time set forth in Rule 12.2(b) in which defendant must file the proper notice. In addition, the defendant had been represented by counsel for one and one-half years prior to trial. Finally, defendant's notice of a defense of mental condi-

tion was filed three weeks before the April 18, 1985 trial date and one month after defense counsel had first asked the psychiatrist to examine the defendant. In view of these circumstances, the Court concludes that there is not a substantial question—a close one which could be decided either way—that the defendant failed to establish good cause for his failure to file a timely notice of a defense based upon his mental condition. *See Duggan, supra,* 743 F.2d at 80 (where notice filed six weeks prior to a once-continued trial date was held untimely and no good cause shown for delay).

■ The next issue is whether, as defendant contends, the exclusion of psychiatric testimony offered to negate the element of specific intent is too severe a sanction under Rule 12.2(b) and therefore reversible error. In support of this proposition, the defendant relies on *United States v. Staggs,* 553 F.2d 1073 (7th Cir.1977). In *Staggs,* the Seventh Circuit Court of Appeals held that the failure to permit a defendant charged with a specific intent crime to introduce evidence of a character trait that makes it unlikely that he harbored the requisite criminal intent was reversible error. *Id.* at 1076. The Seventh Circuit made it clear that it based its holding on grounds of relevancy under Fed.R. Evid. 404(a)(1) and not on the unappropriateness of excluding psychiatric testimony as a sanction under Rule 12.2(b) for a violation of Rule 12.2(b). However, in dicta, the Seventh Circuit referred to the "drastic sanction of exclusion" under Rule 12.2(b). *Id.* at 1077.

Notwithstanding the Seventh Circuit's dicta in *Staggs,* the overwhelming weight of authority authorizes exclusion of psychiatric testimony within the trial judge's sound discretion. *United States v. Duggan, supra; United States v. Dill, supra; United States v. Veatch, supra; United States v. Olson,* 576 F.2d 1267 (8th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978); *United States v. Edwards,* 90 F.R.D. 391 (E.D.Va.1981); *United States v. Hill,* 481 F.Supp. 558 (E.D.Pa. 1979). *Olson* stands for the proposition that exclusion of the expert testimony where a continuance is a viable alternative is "fully authorized by the rule." *Olson, supra,* 576 F.2d at 1273. In addition, *Hill* indicates that exclusion is an appropriate remedy for a defendant's failure to comply with Rule 12.2(b), even where a continuance is a fully conceivable alternative. *Hill, supra.* Finally, the Second Circuit Court of Appeals in *Duggan* found that the district court did not abuse its discretion in excluding psychiatric testimony where, as here, a continuance was a viable alternative and the defendant made an offer of proof. *Duggan, supra,* 743 F.2d at 82.

The connection between a denial of a continuance and exclusion of psychiatric testimony is well recognized in discussions of the policy behind providing notice under Rule 12.2(b) and imposing sanctions under Rule 12.2(d). In its notes regarding Rule 12.2, the Advisory Committee recognized that: "Failure to give advance notice commonly results in the necessity for a continuance in the middle of trial, thus unnecessarily delaying the administration of justice." Notes of Advisory Committee on Rules, Federal Criminal Code and Rules, p. 60 (West Pub.1985). Referring specifically to Rule 12.2(b), the Advisory Committee noted that the purpose of that rule is to "prevent the need for a continuance when such evidence is offered without prior notice." *Id.* at 61. *See also* 8 J. MOORE, FEDERAL PRACTICE ¶ 12.1.01[2], at 12.-2–5 (2nd Ed.1980).

The courts echo the Advisory Committee Notes regarding the propriety of denying a continuance in order to preserve the policy and effect of Rule 12.2(b) notice. In *United States v. Edwards, supra,* the court observed that "the function of the Rule is frustrated when notice is given after the 'time provided' as well as when the evidence is offered without any prior notice. In either instance, a continuance is or may be required." *Edwards, supra,* 90 F.R.D. at 397. *See also United States v. Veatch, supra,* 674 F.2d at 1223–25. Finally, the recent Seventh Circuit case of *United States v. Fountain, supra,* refers to denial of a continuance in the same breath as a violation of Rule 12.2(b) and notes that

such denial will rarely be upset on appeal. *Fountain, supra,* slip op. at 794.

In light of the above discussion regarding the policy and effect of Rule 12.2(b) and in light of the fact that the defendant failed to show "good cause" for the delay in providing Rule 12.2(b) notice, the Court holds that there is no substantial question—a close one which could be decided either way—regarding the appropriateness of excluding expert psychiatric testimony where notice under Rule 12.2(b) is untimely and where the defendant failed to show "cause" for the delayed notice.

2. *Relevancy of Psychiatric Testimony*

In support of his defense based upon mental condition, the defendant offered psychiatric testimony to show that: (1) he was severely depressed at the time the alleged offense was committed; (2) in an effort to ward off and heal his severe depression, defendant became a compulsive gambler; (3) defendant's commodity trading was a manifestation of his compulsive gambling and the resulting need to obtain money for his gambling from any possible source; and (4) defendant lacked the intent to defraud necessary to sustain a conviction under the wire fraud statute. Defendant does not offer the psychiatric testimony to show that he was legally insane. Rather, he offers it as proof of a character trait or existing mental state which negates the specific intent necessary to defraud.

In the offer of proof regarding the psychiatric testimony, Ner Littner, M.D., defendant's psychiatrist, testified that he interviewed the defendant three times for a total of over three hours and his wife for 45 minutes. Dr. Littner also reviewed FBI notes and material from the Evanston Hospital Crisis Center. Dr. Littner was asked to conduct a psychiatric examination of the defendant by his counsel on February 28, 1985.

On direct examination, Dr. Littner first testified that the defendant entered a severe depression following his son's accident and that depression has lasted until the present time. Tr. 27. Dr. Littner testified that defendant's relationships with his wife, father and brother were under severe strain. Tr. 28–31. Dr. Littner also testified that, in his opinion, the defendant left his family on two occasions as the only way to handle his severe depression over his son's accident and the financial pressure caused by the cost of his son's care. Tr. 28. Finally, Dr. Littner testified that, after the defendant left home for ten weeks and after his wife went to Florida with his best friend, the defendant returned home "in a state of suicidal depression, as well as wanting to kill his best friend." Tr. 29.

In his diagnosis of the defendant's psychological condition, Dr. Littner concluded that the defendant possessed a "severe, chronic depression of the neurotic nature." Dr. Littner observed other characteristics as well: "a very strong self-defeating, self-destructive tendency, an amazingly poor judgment, and a great inability to talk about his feelings to other people." Tr. 35. Dr. Littner testified that the defendant's poor business judgment was revealed in personal observation and psychological testing and the doctor concluded that it was a symptom of the defendant's self-destructive tendency. Tr. 36.

Regarding the defendant's commodity trading, Dr. Littner concluded that it was "an attempt on his [defendant's] part to deal with his depression and submerge the feelings attached to the depression." Tr. 40. Finally, Dr. Littner concluded that the defendant was not capable of formulating a specific intent to defraud Paine Webber. Tr. 41.

In his cross-examination, Dr. Littner admitted that the defendant's testimony regarding his intention not to pay Paine Webber for his trading losses did not relate to his depression, but instead related to defendant's belief that his trading account had been churned by Paine Webber. Tr. 48. Dr. Littner attributed the defendant's decision not to pay back Paine Webber to his "poor judgment." Tr. 48. Dr. Littner admitted that the defendant did not tell him that the defendant wrote three checks totaling $170,000 on an account in which he had only $400. Tr. 49. The defendant also did not tell Dr. Littner that a $30,000 check

written on the same account at Paine Webber had bounced. Tr. 50.

The defendant did tell Dr. Littner that he owed over $100,000 to various casinos. Tr. 49. However, the defendant told Dr. Littner that he did not pay the debts to the casinos because they would not send people after the defendant to collect the debts. Tr. 50. In addition, Dr. Littner admitted that nothing in his analysis helps to determine whether the defendant knew if he had sufficient funds to make the three checks given to Paine Webber. Tr. 53.

Dr. Littner was aware that the defendant had a significant gambling habit prior to his son's accident. Tr. 54. Dr. Littner did not know that the defendant had been trading in commodities since 1973, six years prior to his son's accident. Tr. 54. Dr. Littner then stated that the method of trading was the significant symptom of defendant's depression, as opposed to the commodity trading as a whole. Tr. 54. However, the doctor admits that he has little familiarity with commodity trading. Tr. 54–55. He admits also that he does not know whether defendant's trades were highly speculative or minimally risky. Tr. 55. The doctor cannot explain how the defendant wrote $170,000 in checks to Paine Webber to cover his losses and walked away with $40,000 cash. Tr. 56. The doctor testified that he could explain the above sentence as an example of the defendant's "lousy judgment." Tr. 56.

Finally, Dr. Littner agreed that the defendant exercised his own judgment in making his trades. Dr. Littner also agreed that the defendant is "quite capable of appreciating" the criminal nature of a particular type of conduct and is able to conform his conduct to the requirements of law. Tr. 56–57. Dr. Littner had heard that the defendant gambled away part of his son's insurance settlement. Tr. 60. In addition, Dr. Littner agrees that the defendant is not very good at accepting responsibility for his actions. Tr. 60.

Defendant also called Jack Arbit, a clinical psychologist, to testify during the offer of proof. Arbit's testimony mirrored the conclusion made by Dr. Littner. However, on cross-examination, Arbit admitted that nothing which he determined from defendant's psychological testing indicates that the defendant is incapable of intentionally defrauding someone. Tr. 276.

Defendant argues that the excluded psychiatric testimony is relevant to establish his lack of specific intent to defraud and therefore its exclusion constitutes reversible error. In support of this argument, defendant relies heavily on *United States v. Staggs*, 553 F.2d 1073 (7th Cir.1977). In *Staggs*, the defendant's theory of the case was that he neither intended to threaten nor did threaten a federal officer. The psychiatric testimony was offered to prove that the defendant was a person more likely to want to harm himself than to think about directing his aggressions toward others. The Seventh Circuit Court of Appeals concluded that, under Federal Rules of Evidence 401, 402, and 404(a)(1), evidence of this "character trait" made more probable the truth of defendant's assertion that he harbored no criminal intent to assault the federal officer. *Id.* at 1076.

In contrast to *Staggs*, the Seventh Circuit defined "character trait" more narrowly under Rule 404(a)(1) in *United States v. West*, 670 F.2d 675 (7th Cir.1982). Rule 404(a)(1) provides that a defendant may introduce evidence of a relevant character trait to show that he acted in conformity with that trait. In *West*, the defendant attempted to show, through psychiatric testimony of his low intelligence, that he lacked the specific intent (i.e. knowledge) to accept a bribe. The Seventh Circuit found that exclusion of the testimony of low intelligence was not error because low intelligence was not a "character trait" under Rule 404(a)(1) and therefore expert testimony was inappropriate under Fed.R.Evid. 702.

In so holding, the Seventh Circuit defined "character trait" as "elements of one's disposition, 'such as honesty, temperance, or peacefulness.' McCormick on Evidence § 195." *Id.* at 682. The court concluded: "We do not believe that intelligence is a character trait within the meaning of the

rule. Therefore, *United States v. Staggs* is not controlling." *Id.* Implicit in the holding in *West* is the need to scrutinize proffered psychiatric testimony in order to determine what it is offered to prove. This scrutiny takes place during the defendant's offer of proof.

The Court finds the reasoning and result in *West* to be persuasive. In this case, Dr. Littner's testimony does not refer to the character trait of depression or some other disposition of the defendant. As the Court noted above, Dr. Littner explained that the defendant exercised judgment in his commodity trading but did so in a purposefully poor manner due to his depression. In addition, Dr. Littner testified that the defendant was quite capable of appreciating the criminal nature of a particular type of conduct and of acting in a law-abiding manner. Finally, Dr. Littner attributed the defendant's decision not to pay back Paine Webber to his "poor judgment."

■ Having scrutinized the expert testimony in the defendant's offer of proof, the Court finds that the defendant has failed to show the relevance of testimony of his "depression" in his theory of lack of specific intent. Instead, the psychiatric testimony amounts to no more than experts' explanations for his poor judgment in handling his trading and the debts arising therefrom. Therefore, the proferred psychiatric testimony falls far short of linking the defendant's alleged depression to his poor judgment in trading. Following *West*, this Court concludes that evidence of poor judgment in commodity trading and handling debts does not constitute a character trait within the meaning of Rule 404(a)(1).

■ As in *West*, the Court's analysis continues to a determination of whether expert testimony is admissible in this case to show either depression or poor judgment. Expert testimony is admissible only when the specialized knowledge of an expert will assist the trier of fact in understanding the evidence or in determining a fact in issue. Fed.R.Evid. 702. The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court about affairs not within the full understanding of the average man. *West, supra,* 670 F.2d at 682. The review of a district court's admissibility ruling is limited to determining whether the court abused its wide discretion concerning admissibility of expert testimony. *United States v. Watson,* 587 F.2d 365, 369 (7th Cir.1978), *cert. denied sub nom. Davis v. United States,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979).

■ In this case, Dr. Littner testified that the defendant was depressed and that his depression led him to purposefully exercise poor judgment in his commodity trading and his handling of debts. While this testimony was offered to negate the specific intent necessary to defraud, nowhere in Dr. Littner's testimony is there evidence that the defendant lacked knowledge of his actions in writing bad bank drafts to Paine Webber. Therefore, Dr. Littner's testimony would not assist the jurors in determining the defendant's intent to defraud in writing bad bank drafts and would tend to confuse the jurors regarding the defendant's poor judgment in his trading. *United States v. Benveniste,* 564 F.2d 335, 339 (9th Cir.1977).

In addition, the defendant's son testified at trial that his father was depressed and seemed more distant from him. The jury was able to determine from the testimony of the defendant's wife and son that he was depressed and that the depression may have affected his business judgment without the assistance of expert testimony. *West, supra,* 670 F.2d at 682; *United States v. Webb,* 625 F.2d 709, 711 (5th Cir.1980). Furthermore, the defendant's poor judgment and the underlying explanations were plainly within "the ken of lay jurors," *United States v. Fosher,* 590 F.2d 381, 383 (1st Cir.1979), and therefore it was a proper subject for lay testimony. *Webb, supra,* 625 F.2d at 711. In light of the above findings, the Court concludes that the defendant's experts were properly excluded because their proffered testimony was outside the scope of Fed.R.Evid. 702.

## 1569

### B. *Ineffective Assistance of Counsel*

The defendant argues that his counsel's failure to give timely notice pursuant to Fed.R.Crim.P. 12.2(b) of the intent to introduce the excluded expert testimony constitutes ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. In order to establish ineffective assistance of counsel, the defendant must show that (1) his counsel's performance fell below that of a reasonably competent attorney and (2) the counsel's error prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). In this case, careful examination of the record reveals that at least part of the delay in giving notice under Rule 12.2(b) was due to the defendant missing his appointments with Dr. Littner. In light of the entire record, the Court finds that the representation provided by counsel for the defendant met the standard of a reasonably competent attorney. Moreover, the Court's discussion of the admissibility of Dr. Littner's testimony clearly shows that the defendant was not prejudiced by the alleged error of failing to give notice. *United States v. Ellsworth,* 738 F.2d 333, 336 n. 5 (8th Cir.1984).

### III. CONCLUSION

Defendant's motion for bond pending appeal under 18 U.S.C. § 3143 is denied because he has failed to show that there is a substantial question which, if decided in defendant's favor, would likely result in reversal or an order for a new trial on all counts for which imprisonment has been imposed. He has failed to show such a substantial question in:

(1) the exclusion of psychiatric testimony on the grounds of untimely notice under Fed.R.Crim.P. 12.2(b) and of inadmissibility under Federal Rules of Evidence 404(a)(1) and 702; and

(2) the alleged ineffective assistance of counsel.

For the above reasons, defendant has failed to meet his burden under § 3143(b) and therefore his motion for bail pending appeal is denied. Defendant is ordered to surrender to the United States Marshal in Chicago before 12:00 p.m. (noon) on September 3, 1985.

IT IS SO ORDERED.