UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert BENVENISTE,
Defendant-Appellant.

No. 76–3562.

United States Court of Appeals,
Ninth Circuit.

Nov. 11, 1977.

Michael D. Nasatir (argued), of Nasatir, Sherman & Hirsch, Donald M. Re, Los Angeles, Cal., for defendant-appellant.

J. Stephen Czulecer (argued), Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant, Robert Benveniste, was convicted in a jury trial on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and four counts of possession of cocaine with intent to distribute and distribution in violation of 21 U.S.C. § 841(a)(1). Appellant claims error in (1) the exclusion of testimony relevant and crucial to his defense of entrapment; (2) admission of hearsay testimony by a Government informant; (3) exclusion of the results of a polygraph examination; and (4) exclusion of exculpatory psychiatric testimony.

We conclude that the exclusion of the polygraph results and psychiatric testimony was within the sound discretion of the trial court, but that the court erred in excluding testimony of a defense investigator with

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

respect to his interview with a third party, while permitting a government informant to testify as to statements allegedly made by the same person.

### Factual Background

Appellant's defense of entrapment centers on the statements and conduct of Cheryl E. Wyman, a paid informant for the Drug Enforcement Administration (DEA). Wyman had worked for the DEA as an informant on a fee basis on five or six prior occasions. In March, 1975, she took a taxi driven by Larry Mailloux. She asked Mailloux about acquiring cocaine. They arranged to meet socially the next day. They spent the day at the beach and in the evening they spoke again about cocaine. Wyman told Mailloux she was working for people from Texas in the land development business who wanted to obtain cocaine. Wyman subsequently moved in with Mailloux and continued to ask him about obtaining cocaine.

Some time later Mailloux put Wyman in contact with Rachel Meek. Wyman met Meek at Meek's apartment in the late evening of April 2 and early morning of April 3. Wyman, over defense objection, testified that Meek told her that some people who "do the large quantities" of cocaine would soon arrive. A short time later Howard Tabb and appellant arrived. Wyman testified that Meek introduced the two as "heavy dealers".

According to Wyman, appellant said he had sold cocaine before and offered to sell her some. She testified that he brought out a sample case which contained different grades of cocaine and then he, Tabb and Meek "snorted" some. On cross-examination Wyman admitted that she told appellant that she had friends who were land developers from Texas who wanted to buy cocaine. Appellant, who had a real estate certificate, gave her his business card, which indicated his profession, and, according to Wyman, told her to call when she made contact with her friends.

Wyman delayed in calling appellant. Instead, the next day, after she met with DEA Special Agent Steve Jennings, she called Tabb and introduced him to Jennings. Jennings and Wyman then went to Tabb's apartment and purchased cocaine. Negotiations ensued over a larger deal, but no agreement was reached.

Neither Jennings nor Wyman had ever heard of appellant prior to the meeting in Meek's apartment. Jennings indicated no interest in pursuing him, so Wyman proceeded on her own. She called appellant and told him her friends were still interested in obtaining cocaine. They met to discuss this and other matters. Three days later Wyman introduced appellant to Jennings and another agent, Creason, as her friends from Texas. The agents showed appellant they had the money required to pay the purchase price, and appellant showed them a sample of the cocaine, which they tested and found satisfactory. On the following evening appellant met again with the agents and gave agent Creason a black vinyl case. Creason left to test the substance contained in the case, found it was cocaine, and ordered another agent to arrest appellant. The vinyl case was later found to contain 447.7 grams of 20.7 percent cocaine.

### Appellant's Defense

Appellant did not deny that he possessed the cocaine or that he intended to distribute it to Wyman's "friends" from Texas. He claimed, however, that he had no predisposition to traffic in narcotics, that the idea was implanted in him by the informant Wyman, who convinced him that by doing this favor for her land developer friends he would gain their confidence and thereby open the door to work for them as a real estate agent in future land transactions in Southern California. He testified that although he was reluctant initially to engage in this illicit traffic, he was at the time having great difficulties in his chosen vocation because of depressed real estate market conditions. The prospect of doing business with Wyman's friends eventually made him lose his "moral compass".

His version of the events differed substantially from that of Wyman. He testified that on the night he and Tabb met Wyman, it was Tabb who had the sample case and who offered to sell cocaine. According to appellant, Tabb left at one point to obtain more drugs [1] and Wyman engaged him in conversation about her Texas friends who were trying to expand their land development business into Southern California. She told him it was too bad he could not obtain cocaine for them to gain their confidence. Later, after further dealings with Tabb ended, Wyman called appellant to say her Texas people were upset about not getting cocaine and were about to return to Texas. He testified that at that point he began to think about getting the cocaine. He contacted Leonard Grossman who said he could supply it to him and then met Wyman again. At Wyman's urging he met with her land developer friends. He testified that he mostly talked about land development in order to impress them with his knowledge, but they were concerned about cocaine. Eventually he agreed to the transaction in order to obtain their trust.

To support his version of the events, appellant called a number of witnesses who testified that appellant had talked to them about real estate transactions which he was about to engage in with out of state developers. He also presented testimony with respect to his reputation for truth and honesty.[2]

The defense also tried in various ways to introduce evidence from Mailloux, Meek, and a psychiatrist, Dr. Seymour Pollack, to corroborate appellants' claim that he had no predisposition to commit the offense charged. A private investigator, LaJeunesse, would have testified that Mailloux told him that Wyman had offered Mailloux money to set up a cocaine deal. Mailloux could not be found at the time of trial. The court refused to permit LaJeunesse to testify as to statements made by Mailloux.

Meek was called to the stand, out of the presence of the jury, to testify on behalf of the defendant. She refused to testify and asserted her right to remain silent under the Fifth Amendment. The court denied appellant's motion to grant her immunity. The defense then made an offer of proof that she had told LaJeunesse that Wyman had offered her $1,000 to set up a cocaine deal, that Wyman had snorted cocaine at her apartment, that it was Tabb who displayed the vials of cocaine, and that appellant took little part in the conversations. The court, likewise, refused to permit LaJeunesse to testify as to statements made by Meek.

The defense offered Dr. Pollack as a psychiatrist who had examined appellant and was familiar with the facts and circumstances surrounding the drug transaction. Dr. Pollack was examined outside the presence of the jury. He testified that he had formed an opinion as to appellant's predisposition and susceptibility to commit the offense charged. His opinion was that appellant was not predisposed to drug dealing prior to meeting Wyman. The court found Dr. Pollack's testimony "confusing" and refused to admit his testimony.

### Results of Polygraph Examination

■ Appellant underwent a polygraph examination and the results indicated that he was truthful when he said he had not sold cocaine before April 7, 1975. At the time of trial, he made a motion to introduce the results of that examination. The court denied the motion.

■ In *United States v. De Betham*, 470 F.2d 1367, 1368 (9 Cir. 1972), *cert. denied*, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973), this court indicated that while expert testimony relating to polygraph tests may be admissible, the district courts have

---

1. Although Wyman first testified that Tabb never left the apartment during the meeting, she later admitted that she had been mistaken, that he did in fact leave for nearly 45 minutes. See note 6 *infra*.

2. Paul Migdal, an attorney for TransAmerica Mortgage Company, testified that Benveniste had been responsible for exposing a fraud in government housing contracts while working for that company.

wide discretion in refusing to admit the testimony. In *United States v. Marshall*, 526 F.2d 1349, 1360 (9 Cir. 1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976), we held:

> With the polygraph's misleading reputation as a "truth teller," the widespread debate concerning its reliability, the critical requirement of a competent examiner and the judicial problems of self-incrimination and hearsay, a trial court will rarely abuse its discretion by refusing to admit the evidence, even for a limited purpose and under limited conditions. (Citing *United States v. Demma*, 523 F.2d 981, 987 (9 Cir. 1975) (en banc)).

We find no reversible error in the court's decision to exclude the polygraph results.

### Testimony of Dr. Pollack

■ Appellant argues that the court's refusal to admit expert testimony concerning his psychological susceptibility to the inducement utilized by the Government and his lack of predisposition to commit a criminal offense was prejudicial error. Although there is some authority that expert testimony on the issue of predisposition may be admitted, *United States v. Mosely*, 496 F.2d 1012, 1017 (5 Cir. 1974), admission of such testimony is again a matter left to the discretion of the trial court. *United States v. Barnard*, 490 F.2d 907, 912–13 (9 Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *United States v. Amaral*, 488 F.2d 1148, 1152 (9 Cir.

1973). Rule 702 of the Federal Rules of Evidence permits the testimony of an expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." After hearing Dr. Pollack's testimony out of the presence of the jury, the court determined that it would tend to confuse the jury and not shed any light on the issue. Under those circumstances we find no abuse of discretion in the trial court's exclusion of the proffered testimony.[3]

### Statements by Meek

■ The defense first sought to obtain Meek's testimony through a grant of immunity. When the Government refused to grant immunity,[4] the defense offered the testimony of its investigator LaJeunesse with respect to statements made to him by Meek regarding the meeting at her apartment. The Government objected to the offered testimony as hearsay and it was refused, even though the Government's informant Wyman had been permitted to testify regarding statements made by Meek at the same meeting, both before and after the arrival of appellant and Tabb. As a result, hearsay statements which tended to inculpate appellant were admitted, while hearsay statements which tended to exculpate him were refused. Particularly in view of the fact that the Government's case on entrapment depends largely on Wyman's credibility, it is necessary to consider in some detail the evidence relating to entrapment.

---

3. This is not to say that admission of such testimony would have been improper. At a new trial, admission of both the polygraph results and the psychiatric testimony will again be within the discretion of the trial court.

4. Although appellant initially argued that either the Government or the trial court should have granted immunity to Meek, in his reply brief he appears to have abandoned that argument and instead only seeks to have Meek's version of the initial meeting at her apartment introduced through the testimony of LaJeunesse. It is well established that the trial court has no power to grant immunity to a witness whose testimony the defendant may wish to offer and the Government cannot be forced to grant such immunity. *E. g., United States v. Jenkins*, 470 F.2d 1061, 1063 (9 Cir. 1972), *cert. denied*, 411

U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313 (1973). *Earl v. United States*, 124 U.S.App.D.C. 77, 361 F.2d 531, 534 (1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). In *Earl* the court also rejected the defendant's contention that the Government's refusal to grant immunity was prohibited by the principles of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

It was, however, within the power of the Government to grant immunity. It elected not to do so and then objected to LaJeunesse's testimony, even though it had relied in part on Wyman's testimony regarding statements made by Meek. Nor does it appear that the Government ever attempted to prosecute Meek for her involvement.

At the outset, it may be noted that this case differs from those cases where either the defendant acknowledges or there is substantial uncontroverted evidence to show his involvement in criminal activity prior to the acts with which he is charged. *E. g., United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Here there is no evidence that appellant had engaged in any prior narcotics dealings. Wyman admitted she had never heard of appellant prior to the transactions at issue here.

We note also that there is significant external evidence to corroborate appellant's version of the transaction. After her initial meeting with Meek, Tabb and appellant, Wyman filed a report to the DEA which named Tabb as the person who had displayed the cocaine sample case to her.[5] Agent Jennings also testified at the trial that Wyman had described Tabb as the person with the sample case. Similarly, from the agents' actions subsequent to Wyman's meeting with Tabb and appellant it is apparent that Tabb was their primary target for investigation.

Appellant introduced testimony from third parties that prior to meeting Wyman he had been very depressed about his lack of work in the real estate business and that coincident with meeting Wyman he began to actively inquire about land development possibilities for some out of town investors. He attempted thereby to show that his principal concern in meeting Wyman and her friends was to engage them in real estate transactions. This testimony and appellant's own testimony was apparently not enough, however, to convince the jury that he was not otherwise predisposed to traffic in drugs before meeting Wyman.

It is clear from recent decisions of the Supreme Court that the proper focus in an entrapment case is not the alleged misconduct of the Government, but rather the predisposition of the defendant to engage in the criminal activity with which he is charged. See *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); accord *Hampton v. United States*, 425 U.S. 484, 488, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). The crucial question is whether the Government officials "implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order that they may prosecute". *Russell*, 411 U.S. at 435, 93 S.Ct. at 1644, (quoting *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)). As such, entrapment is a factual issue to be submitted to the trier of fact. See *Osborn v. United States*, 385 U.S. 323, 331, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); *United States v. Griffin*, 434 F.2d 978, 982 (9 Cir. 1970), *cert. denied sub nom. Andrews v. United States*, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971).

Appellant contends that he had a right to present fully all available evidence bearing on his entrapment defense to show a lack of predisposition to engage in the criminal activity. In particular, he argues that he should have been permitted to present, through the testimony of LaJeunesse, statements made by Meek which would contradict much of Wyman's testimony and would also corroborate his claim that at the initial meeting he engaged in no drug sale negotiations, but rather it was Tabb who had the sample case and who was attempting to negotiate a cocaine sale.

Wyman's testimony, uncontradicted and unimpeached, could have been sufficient to convince the jury of appellant's predisposition to sell cocaine. In contrast, Meek's

---

5. There are a number of inconsistencies in Wyman's testimony. For example, although Wyman initially claimed to remember very well what happened at the initial meeting in Meek's apartment, she did not recall that Tabb had ever left the apartment during that time. When she was shown the DEA report she had filed the next day, however, she changed her testimony and admitted she had made a mistake, and that Tabb had in fact left for nearly 45 minutes. Upon changing her testimony to conform to her report she acknowledged that the report was more accurate because it was written at the time the events took place. Later when questioned about the inconsistency in her testimony and the report regarding the person who had the cocaine sample case, she insisted that it was the report which was in error.

statements, if believed, could have generated considerable doubt about appellant's predisposition by showing that he had been only a passive observer at the initial meeting. Those statements would also have raised questions about Wyman's credibility by directly contradicting her testimony that she had not offered Meek money to help set up a cocaine deal and that she had not personally ingested any cocaine at the meeting in Meek's apartment.

Rule 804(b) of the Federal Rules of Evidence enumerates exceptions to the general rule prohibiting the introduction into evidence of hearsay statements. Subsection (3)[6] permits the introduction of hearsay statements if they tend to subject the declarant to criminal liability and the declarant is unavailable to testify at the trial. Meek's assertion of her Fifth Amendment rights made her unavailable for the purpose of that rule. See F.R.Evid. 804(a)(1).

■ Whether her statements were actually against her penal interest is a more difficult question. That she decided to assert the Fifth Amendment lends strong support to the conclusion that her testimony would tend to subject her to criminal liability. Out of context, however, the specific statements she made to LaJeunesse which contradict Wyman would not alone be against her penal interest. We do not believe, however, that rule 804(b)(3) was intended to apply only to statements which amount to direct confessions of criminal responsibility. Otherwise Congress would not have used the broadly worded phrase "tended to subject".

Meek's statements to LaJeunesse implicate her as a key participant in a major drug sale negotiation. If Meek had been charged with conspiracy to sell cocaine her statements would show she knowingly played an active role in bringing Tabb, Wyman and appellant together and that she had detailed and intimate knowledge of the transaction.

■ Our conclusion that Meek's statements to LaJeunesse were admissible as against her penal interest is buttressed by the corroborating circumstances—required by Rule 804(b)(3)—which "clearly indicate the trustworthiness of the statement[s]". As noted above, Wyman's report named Tabb, not appellant, as the person with the sample case. Wyman and Jennings admitted their primary concern was to negotiate a sale with Tabb. Jennings initially had no interest in pursuing appellant. These facts indicate that appellant did not, in fact, play a significant role in the first encounter with Wyman.

The exclusion of this evidence deprived appellant of crucial substantiation of his asserted defense of entrapment and thereby deprived him of a fair opportunity to defend against the Government's accusations. The Supreme Court has stated: "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). In *Chambers* a state's "party witness" rule prevented the defendant from cross-examining as an adverse witness a person called by the defense and the state's hearsay rules prevented the defendant from introducing evidence from three witnesses who would have testified that another person had independently confessed the crime to them. The Supreme Court reversed the conviction and ordered a new trial. The Court concluded that Chambers' defense was "far less persuasive then it might have been" had he been given an opportunity to subject the witness to cross-examination or had the other confessions been admitted. *Id.* at 294, 93 S.Ct. at 1045.

---

**6.** The exception to the hearsay rule in Rule 804(b)(3) reads:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Appellant's situation is analogous. He, like Chambers, sought to introduce testimony from a witness concerning statements made by another person to that witness which tended to incriminate the other person and exculpate the defendant. He was unable to present direct evidence from Meek by reason of her assertion of her Fifth Amendment rights and the Government's refusal to grant her immunity. He was not permitted to introduce testimony from LaJeunesse regarding statements made by Meek which would have reinforced his version of events at the initial contact and contradicted Wyman's version. As a result, his case was "far less persuasive than it might have been".

In view of our conclusion that under the circumstances of this case, LaJeunesse's testimony should have been admitted, it is unnecessary to consider further appellant's contention that the court erred in admitting Wyman's testimony regarding her conversation with Meek. It may be noted, however, that in contending that LaJeunesse's testimony was properly refused and Wyman's testimony was properly admitted, the Government argues that Wyman's testimony was not hearsay because it was not offered for the truth of the matter asserted. It seems apparent, however, that Meek's alleged statement that the people coming to her apartment were able to "do the large quantities" was offered in support of the Government's case to show that appellant was predisposed to sell cocaine.[7]

### Conclusion

The Government's case on entrapment depends largely on Wyman's credibility. Meek's statements, either directly through her own testimony or indirectly through her statements to LaJeunesse, might well have resulted in a different verdict, since the evidence of appellant's predisposition was not overwhelming. The Government refused to grant Meek immunity and objected to LaJeunesse's testimony. Yet it introduced

through Wyman statements allegedly made by Meek. We conclude that the rejection of the exculpatory hearsay was in error, particularly in view of the fact that accusatory hearsay was admitted.

Reversed and remanded for further proceedings.

---

7. Nor is it necessary to consider appellant's contention that LaJeunesse should have been permitted to testify regarding statements made

by Mailloux. Appellant failed to satisfy the trial judge that Mailloux was in fact "unavailable".