## UNITED STATES of America

v.

## Paul HILL, Appellant.

### No. 80–1202.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule (12)6 Oct. 17, 1980.

Argued Feb. 27, 1981.

Decided July 23, 1981.

Opinion on Denial of Rehearing and Rehearing En Banc
Sept. 25, 1981.

**514**

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section (argued), Daniel B. Huyett, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Hardy Williams (argued), Philadelphia, Pa., for appellant.

Before GIBBONS and ROSENN, Circuit Judges and WEBER,* District Judge.

## OPINION OF THE COURT

WEBER, Chief District Judge.

This matter is before the original panel of the Court on a grant of rehearing from its decision of November 25, 1980.

This is an appeal from a criminal conviction on five counts of distribution of narcotics. Appellant contended at trial that a government informant had induced him to arrange narcotics sales to two government agents. This appeal raises the question of the admissibility and proper use of expert psychological testimony in an entrapment defense to establish a defendant's unique susceptibility to inducement. Because the District Court misapprehended the nature of the offer of proof and applied too restrictive a view of such offered evidence resulting in the practical exclusion of the testimony of appellant's proffered expert witness, we reverse and remand for a new trial.

Appellant, an individual of alleged subnormal intelligence, was employed as a clothing salesman at Krass Bros. in Philadelphia. In February of 1979, he was approached by Ian Daniels, an FBI informant, who inquired about making a heroin buy

and locating a source. Hill rebuffed Daniels' initial requests, but the informant persisted in making additional contacts and requests over the following month, and Hill relented.

On March 13, 1979, Daniels and a federal agent made a heroin purchase from Leonard Newton, an acquaintance of Hill. Appellant arranged, and was present at, the sale. Additional sales to government agents were arranged by Hill and made by the source, Newton, on March 14, and 29, April 23, and June 12, and 18, 1979.

Appellant was indicted on one count of conspiracy and six counts of distribution of heroin. Hill's only defense was entrapment, arguing that the informant Daniels had induced him to procure drugs for the government agent.

■ This defense requires admission of guilt of the crime charged and all of its elements, including the required mental state. *United States v. Watson*, 489 F.2d 504 (3d Cir. 1973).

Following its deliberations, and supplemental instructions from the court, the jury returned with a verdict of not guilty on the conspiracy count and the first distribution count, but guilty on the remaining five distribution counts. The jury evidently accepted the defense of entrapment as to the conspiracy count and to the first substantive count. The jury was evidently concerned about the entrapment defense because they returned to ask the court two questions, interpreted by the trial judge as asking essentially whether if they found that there was entrapment as to any one count there was of necessity entrapment as to all the other counts. The court's additional instructions were that if the government had not carried its burden with respect to a particular count, the jury must consider the other counts to determine whether this was a continuing course of conduct, or whether the defendant acted for other reasons than entrapment with respect

---

* Honorable Gerald J. Weber, Chief United States District Judge for the Western District of Pennsylvania, sitting by designation.

to the other counts; and that a finding of entrapment as to one count did not necessarily require a finding of entrapment as to any other count.

During trial, the District Court refused to allow appellant to call an expert witness, a clinical psychologist, to testify to appellant's psychological characteristics, subnormal intelligence, and resultant susceptibility to persuasion and psychological pressure until after the defendant had testified.

In addition to barring the witness' immediate testimony the effect of the ruling was to impose a condition that the defendant waive his constitutional right not to testify.

Appellant contends that the District Court abused its discretion in imposing such a condition on the proffered testimony of the psychologist. The District Court concluded that because the expert witness had not heard the testimony of the informant or the defendant, no proper foundation had been laid for his testimony.

The offer of proof was somewhat confusing and may have led to its being misapprehended by the trial judge. It and the colloquy attending it are set forth in the record at transcript pages 6–3 to 6–12 (Appellant's Appendix 4A to 13A). The United States objected to the production of the witness under Fed.R.Crim.P. 12.2(b) for lack of the required notice. The United States also objected on the grounds of relevancy. The court's ruling, sustaining the government's objection, was based on the grounds that there was no foundation laid as to any opinion which the doctor could give as to the nature of any assertions made to Mr. Hill by the witness Daniels. The doctor was not in the courtroom when Mr. Daniels testified, and therefore would not be in a position to state anything, or give any opinion about the effect of whatever Mr. Daniels may have said to Mr. Hill. (Tr. p. 6–6). The court further added a condition that if the doctor remained in court and Mr. Hill testified, then the doctor might have some basis for examining testimony. "But right now he doesn't have any basis and I will refuse to permit the doctor to testify based on the present status of the record." (Tr. p. 6–9).

Thus we see that the trial judge did not absolutely bar the testimony proffered, but imposed a condition on it that the defendant Hill must testify first and the doctor remain in the courtroom to hear this testimony. The doctor who had been present in the courtroom for two days could not wait longer and departed. Hill did testify in his own defense.

■ The defendant offered the testimony of the clinical psychologist as to three matters:

(a) A complete profile from the records and tests of defendant which were examined by the witness;

(b) An opinion by the witness as to defendant's characteristics of susceptibility;

(c) An opinion by the witness as to the effect of the government informant's skill and cunning upon defendant's susceptibility.

The second and third items of testimony are not clearly distinguished in the offer and may well have contributed to the court's misapprehension of the nature of the offer. The trial court could properly have excluded testimony concerning the "skill and cunning" of the government informant because the expert had no opportunity to observe or evaluate this informant, either prior to trial or at trial. *United States v. Caldwell*, 543 F.2d 1333 (D.C.Cir.1974).

■ Federal Rules of Evidence 702 and 703 provide:

## Rule 702.
### TESTIMONY BY EXPERTS

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

## Rule 703
### BASES OF OPINION TESTIMONY BY EXPERTS

The facts or data in the particular case upon which an expert bases an opinion or

inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

There is no requirement that the facts necessary to the foundation of the expert's testimony must be perceived by him at trial. He may testify to relevant matters based on facts in evidence or those made known to him prior to trial. *United States v. Smith*, 519 F.2d 516, 521 (9th Cir. 1975); *Jenkins v. United States*, 307 F.2d 637 (D.C. Cir.1962).

■ The expert was offered to give testimony as to tests and profiles compiled from his personal examination of the defendant. These are facts derived from first hand knowledge and are relevant to the required element of predisposition of the defendant. The expert may testify as to these without giving an opinion, leaving the inference to be drawn by the trier of fact (See Advisory Committee Notes on Rule 702). Such testimony is admissible under Rules 702 and 703 without the imposition of the condition imposed by the trial judge.

■ The exclusion of the expert's opinion as to defendant's susceptibility was likewise improper under Rule 703 because there is no requirement that the opinion be based on the evidence at trial. Rule 703 allows opinion testimony on facts or data perceived or made known to the witness at or before the hearing.

The Advisory Committee Notes on Rule 703 identify three bases for expert opinions:

(1) Firsthand observation by a witness;

(2) Presentation at trial;

(3) Data compiled by others and presented to the expert out of court.

While this witness was not offered to give an opinion based on facts presented at trial, he was prepared to meet the other two bases.

■ Testimony by an expert concerning a defendant's susceptibility to influence may be relevant to an entrapment defense.

*United States v. Benveniste*, 564 F.2d 335, 339 (9th Cir. 1977). An expert's opinion, based on observation, psychological profiles, intelligence tests, and other assorted data, may aid the jury in its determination of the crucial issues of inducement and predisposition. This is the purpose ascribed to expert testimony by Federal Rules of Evidence 702, and it appears most applicable to the instant case. A jury may not be able to properly evaluate the effect of appellant's subnormal intelligence and psychological characteristics on the existence of inducement or predisposition without the considered opinion of an expert.

■ Accordingly, if the expert can reach a conclusion, based on an adequate factual foundation, that the appellant, because of his alleged subnormal intelligence and psychological profile, is more susceptible and easily influenced by the urgings and inducements of other persons, such testimony must be admitted as relevant to the issues of inducement and predisposition.

■ We also believe that the proffered testimony was admissible on an entirely different basis, and free of the restrictive conditions which the trial judge imposed on its admissibility here:

### FEDERAL RULES OF EVIDENCE

#### Rule 405.

### METHODS OF PROVING CHARACTER

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

As noted in *United States v. William Curtis, III*, 644 F.2d 263 (3d Cir. 1981), the new Federal Rules of Evidence 405(a) now permit two kinds of character evidence, now allowing testimony by an expert witness on traits of character which may be substantively relevant. The character trait of susceptibility to inducement is an ele-

ment of the defense offered here, the burden of negating this resting on the government. Thus, the exclusion of expert opinion testimony in an entrapment defense of defendant's unusual susceptibility to suggestion was improper. *In United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977), the exclusion of testimony of a psychologist as to a trait of character relevant to lack of intent was held error.

The government also contends that the expert's testimony was properly excluded because appellant failed to comply with Fed.R.Crim.P. 12.2(b) by not notifying the Government of his intention to call an expert witness to testify to appellant's mental state. The text of Rule 12.2(b) does not specifically address this issue with relation to an entrapment defense, stating only that:

"[I]f a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the Government in writing of such intention and file a copy of such notice with the Clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

Sanctions for the violation of this rule are provided in subsection (d), which states:

"[I]f there is a failure to give notice when required by subdivision (b) of this rule or to submit to an examination when ordered under subdivision (c) of this rule, the court may exclude the testimony of any expert witness offered by the defendant on the issue of his mental state."

While the phrase "expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether [the defendant] had the mental state required for the offense charged" may be broad enough to encompass expert testimo-

ny on the defense of entrapment, the legislative history and Advisory Committee notes concerning Rule 12.2(b) do not discuss its applicability to expert psychiatric testimony on entrapment.

The question of specific application of Rule 12.2(b) to an entrapment defense has never been ruled upon.

Two cases have discussed, albeit briefly, the applicability of this rule to a defense of entrapment. In *United States v. Perl*, 584 F.2d 1316 (4th Cir. 1978), the defendant, a member of the Jewish Defense League, was charged with wilfully conspiring to destroy property utilized by foreign officials. At trial Perl relied primarily upon an entrapment defense. On appeal Perl claimed that the court erred in excluding certain expert testimony on the defense of entrapment. With respect to the exclusion of expert testimony on the defense of entrapment the court concluded that it need not reach the question of whether this testimony fell within the scope of Rule 12.2(b). In the court's opinion, even if this testimony had been admitted, no defense of entrapment could have been shown since no government agents took any part in the conspiracy.

In *United States v. Alberico*, 453 F.Supp. 178 (D.C.Colo.1977), the court recites that the criminal defendant filed a notice pursuant to Rule 12.2 of his intent to offer psychiatric testimony in support of an entrapment defense. The court did not rule on the question of whether or not such a notice was required however.

In other cases, however, courts have applied Rule 12.2(b) in requiring notice of a variety of defenses relating to the mental state of the defendant. For example, in *United States v. Hearst*, 412 F.Supp. 863 (N.D.Cal.1975), the court required defense counsel to provide timely notice of its intention to rely upon a "brain washing" defense. In reaching this conclusion the court expressly relied on Rule 12.2(b).

In *United States v. Olsen*, 576 F.2d 1267 (8th Cir. 1978), the Court of Appeals in an income tax case concluded that Rule 12.2(b) would require notice of expert testimony on

a defense of alcoholism when that defense is used to negate the element of intent necessary for the crime.

Finally, in *United States v. Staggs, supra,* the court held that Rule 12.2(b) notice was required for psychiatric testimony dealing with the question of whether or not the defendant was capable of forming the specific intent required for the crime charged. The court in *Staggs,* however, indicated that failure to abide by the provisions of Rule 12.2(b) would not automatically lead to exclusion of the expert testimony. The court indicated that it was within the discretion of the trial judge to exclude this evidence. The court characterized that sanction as "drastic" and indicated that the district court should delay trial rather than bar the production of this evidence.

There being no clear application of Rule 12.2(b) to an entrapment defense, we face the question of whether the language of Rule 12.2(b) gives fair notice that it will be applied to the characteristic of susceptibility in an entrapment defense. An entrapment defense was distinguished from an insanity defense in *United States v. Mosley,* 496 F.2d 1012, 1017 (5th Cir. 1974), where the court held that a waiver of an insanity defense does not constitute a waiver of an entrapment defense.

■ Given the lack of a clear indication that Rule 12.2(b) will apply to an entrapment defense, we find it an insufficient basis to exclude the proffered testimony in this case. Moreover, under the circumstances of this case, we find this application inappropriate. Appointed counsel for this indigent defendant learned of this evidence during the course of trial. He took immediate steps to procure an expert to conduct an examination and notified the United States Attorney of his identity. There was no way in which he could have complied fully with the rule before the offer of testimony. He had the witness available in court for two days. Under the court's ruling he could not present the testimony until after defendant had testified. He could not do it then because the witness had departed. Under these circumstances we do not believe that a rigid application of the sanction of exclusion was required.

Because we conclude that the District Court's trial rulings necessitate a new trial, we do not reach any of appellant's other contentions.

For the reasons stated above, we conclude that the District Court imposed an impermissible condition by refusing to admit relevant testimony by the appellant's expert witness, and the judgment of the District Court will be reversed and the case remanded for a new trial in accordance with this opinion.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent because I believe that (1) the trial judge's evidentiary ruling on the need of a foundation for the expert's testimony was not error and did not amount to a compulsory waiver of the defendant's right not to testify, and (2) the expert psychological testimony proffered by the defense to establish the defendant's unique susceptibility to inducement is controlled by Fed.R.Crim.P. 12.2(b), and was therefore properly excluded.

In response to an objection of the Government pertaining to the relevancy of the expert testimony proffered by the defendant, defense counsel informed the trial judge that the psychologist's testimony was relevant because it was

likely to shed some light on the issue in question [which] is what the defendant contends is his capacity, is his state of mind, is his ability to withstand what we say is inducement by the government.

The trial judge sustained the Government's objection to this testimony because no foundation had been laid for any opinion the doctor may have had that was based on "the nature of any assertions that were made to Mr. Hill by the witness [informant] Mr. Daniels." In support of his ruling, the judge stated that the doctor was not in the courtroom to hear Daniels testify and would therefore not be in a position to offer an opinion on the effect of Daniels' conversation on the defendant. In response, defense counsel stated he intended to offer a complete profile of the defendant from records and tests and ask the doctor to testify, based on Hill's history and the doctor's examination of him, as to the likelihood that Hill could "resist the skill or cunning of an informer." The court thereupon pointed out to counsel that he could not be sure whether the jury would find that Daniels was "skilled and cunning" and, more importantly, that the doctor "had no knowledge whatsoever" about the substance and duration of the conversation between Hill and

Daniels. Although defense counsel thereupon modified his offer to have the doctor testify whether Hill would be able to "resist the urgings of a skillful and communicative informant, agent or police officer," the court suggested that the defendant lay a foundation for the expert testimony by first having Hill testify and having the doctor hear that testimony and Hill's recitation of his conversation with Daniels. In the absence of a proper foundation, the court would not permit the proffered testimony.[1]

At no time did the court impose as a condition for the expert's testimony that Hill testify, although in fact Hill did subsequently testify even without any expert testimony. The psychologist, however, did not remain in the courtroom to hear Hill's testimony. I see no error in the ruling of the district court in rejecting the proffered testimony on this record. Under the terms of the proffer, the witness was not merely offering an opinion on (1) the mental condition of the defendant, but also (2) on his capacity to respond to the manipulations of a skillful and perhaps even cunning informant. The expert, however, had no solid basis for testifying to the second aspect of this proposed composite rendition. The expert had failed to observe the informant or hear any testimony from him concerning the nature of the alleged inducements he may have offered Hill and Hill's response to the inducements. The defense also failed to demonstrate that the psychologist had any expertise concerning "skillful and communicative" informants. The trial judge acted well within his authority under Fed.R.Evid. 705 in insisting that a proper foundation be laid for Dr. Brutten's testimony, especially in light of the surprise that testimony presented to the prosecution. *See* 3 Weinstein's Evidence ¶ 705[01] at 705–9. The rule's relaxation of the requirement that facts and data underlying an expert's opinion be disclosed routinely does not affect the requirement that they exist. *See* Fed. R.Evid. 703.

The majority are able, upon reflection and after briefing and argument, to reduce Hill's proffer to three components and to then conclude that as to two of the three components a proper foundation had been laid. The majority concede, however, that "[t]he offer of proof was somewhat confusing and may have led to its being misapprehended by the trial judge." Maj. op., at 515. I am in agreement with the Government that when counsel makes a proffer of evidence, the terms of the proffer govern admissibility. Thus, I do not believe it is the trial judge's responsibility—nor ours—painstakingly to dissect a "confusing" proffer of evidence to determine whether, presented in a different manner, it might be admissible under some other rule of law.

Moreover, the trial court has wide discretion in determining whether to admit or exclude evidence, particularly in the case of expert testimony, and only if the reviewing court determines that the trial judge's decision is "manifestly erroneous" is there an abuse of discretion and ground for reversal. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed. 313 (1962); *Fuentes v. Reilly*, 590 F.2d 509 (3d Cir. 1978). *See United States v. Benveniste*, 564 F.2d 335, 339 (9th Cir. 1977). Because Fed.R.Evid. 611(a) specifically requires the trial judge to exercise reasonable control over the order of the witnesses[2] and in view of the defense's failure to lay a proper foundation for the expert's testimony, I do not believe a reviewing court can say that under such

---

1. In his opinion denying motions for judgment of acquittal and new trial, the trial judge explained his ruling on this issue:

> The defendant had not as yet been called to the stand and therefore the doctor obviously had not heard his testimony, nor could he know how Hill would respond to cross-examination. I suggested to counsel for the defendant that Dr. Brutten remain in the courtroom so that he could at least hear Hill describe his various encounters with Daniels. Dr. Brutten, however, had other appointments and I was told that he could not remain. . . .
>
> Primarily, my ruling was based on the complete absence of any foundation for the testimony. . . . I did not refuse to permit the doctor to testify—I only insisted that there be some sort of minimal foundation for him to do so.

*United States v. Hill*, 481 F.Supp. 558, 561–62 (E.D.Pa.1979).

2. Fed.R.Evid. 611(a) provides in pertinent part:

> (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time. . . .

circumstances it was manifestly erroneous to reject the testimony of the expert.

In rejecting the expert's testimony, the trial court also relied on the failure of the defense to comply with Rule 12.2(b) of the Federal Rules of Criminal Procedure. The rule provides in pertinent part:

> If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue whether he had the mental state for the offense charged, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention .... The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

Rule 12.2(b) is an expression of a modern trend in the law to enhance the search for truth in a criminal proceeding and reduce the element of strategic surprise, at the same time avoiding a possible need for continuance and mid-trial recesses. Hill plainly disregarded the notice requirements of Rule 12.2(b). Hill's counsel subpoenaed defendant's school records on the third day of trial, Thursday, September 6, 1979. He knew then that he was endeavoring to establish defendant's mental condition as an essential arm of his entrapment defense. However, he waited until Wednesday, September 12, 1979, before he gave notice to the Government and the court. Without timely notice, the Government had little or no opportunity to consult with its expert in preparation for cross-examination of the defendant's expert or to provide the government expert with the necessary opportunity to observe the defendant and to hear his testimony and that of his expert. The majority conclude that Rule 12.2(b) does not specifically address the requirement of notice in relation to an entrapment defense, maj. op., at 517, and therefore hold that it is an insufficient basis on which to exclude the proffered testimony. I cannot agree with this holding.

Subsection (b) specifically requires written notice to the Government if the defendant intends to introduce expert testimony relating to a "mental disease, defect, or other condition bearing upon the issue whether he had the mental state required

for the offense charged ...." The purpose of this rule, according to the Notes of the Advisory Committee, 18 U.S.C.A. Rule 12.2, is to prevent the need for a continuance when such evidence is offered without prior notice and to avoid unnecessary delay when "prior notice of intention to use expert testimony on the issue of mental state" is not provided. The caption of the section gives notice that the Rule applies to a "Defense Based upon Mental Condition." The proffer of the evidence to the trial judge spoke directly to the defendant's "state of mind" and his mental ability to withstand governmental inducement. Although the defendant did not raise his mental condition as a defense to the substantive offense of distributing drugs, he nonetheless raised it as a major element of a defense to relieve him of responsibility for the crimes which he concedes he committed. The purpose in requiring notice of mental condition evidence is as compelling in an entrapment defense as it is in an insanity defense. In either case, the Government must prepare for a psychiatric defense and it should have the requisite notice to avoid trial delay and provide adequate preparation.

Hill contended that his mental condition made him susceptible to entrapment by the Government. Entrapment goes to the defendant's predisposition, his state of mind at the time the Government allegedly commenced the inducement. Here, the defendant specifically offered expert testimony to provide evidence of a mental condition that made defendant's state of mind particularly susceptible to inducement. This testimony of mental condition was therefore pertinent to the issue raised by the defense to the crime charged. Thus, the Government should have had timely notice of this defense unless for cause shown the trial court permitted late filing. Were the majority to prevail, it would render Rule 12.2(b) ineffective with respect to a vast number of narcotics prosecutions where the defense is built around entrapment.

Therefore, because I believe that the district court properly ruled on the proffer *as made at trial*, I would affirm Hill's conviction. I would also hold that expert testimony on the defendant's mental condition bearing on his susceptibility to inducement, when offered in support of an entrapment defense, falls within the scope of Fed.R. Crim.P. 12.2(b) and that notice of its intended use must be given to the prosecution.

## SUR PETITION FOR REHEARING

Present: ALDISERT, ADAMS, GIB-
BONS, ROSENN, HUNTER, WEIS,
GARTH, HIGGINBOTHAM and SLOVI-
TER, *Circuit Judges.*

The petition for rehearing filed by Appel-
lee in the above entitled case having been
submitted to the judges who participated in
the decision of this Court and to all the
other available circuit judges of the circuit
in regular active service, and no judge who
concurred in the decision having asked for
rehearing, and a majority of the circuit
judges in the circuit in regular active ser-
vice not having voted for rehearing by the
Court in banc, the petition for rehearing is
denied.

Judges Hunter, Weis and Garth would
grant the petition for rehearing.

Judges Adams and Garth would grant
rehearing in this matter because they are
concerned that the interpretation of Feder-
al Rule of Criminal Procedure 12.2(b) an-
nounced by the majority would result in
serious disruptions of many criminal trials,
particularly in narcotics cases. This is a
matter that they believe is of sufficient
import to merit consideration by the entire
Court before the interpretation becomes
uniform throughout the circuit.