**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Antonio MC LEAN–DAVIS,
Defendant-Appellant.**

No. 84–3875.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1986.

Frank R. Jakes, Shackleford, Farrior, Stallings and Evans, P.A. (court appointed), Tampa, Fla., for defendant-appellant.

Terry Flynn, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

Antonio Mc Lean-Davis, a Colombian national, appeals his conviction on one count each of: (1) importation of marijuana into the United States, 18 U.S.C. § 2 & 21 U.S.C. § 952(a); (2) possession of more than one thousand pounds of marijuana with the intention to distribute it, 18 U.S.C. § 2 & 21 U.S.C. § 841(a)(1); (3) conspiracy to possess and distribute marijuana, 21 U.S.C. §§ 841(a)(1), 841(b)(6); and (4) traveling in interstate commerce to facilitate a criminal enterprise, 18 U.S.C. §§ 2, 1952.

### THE GOVERNMENT'S CASE

The government's evidence at trial showed that Mc Lean-Davis befriended the captain and crew of the BRINNEY LOUISE while that American commercial fishing and shrimping vessel ("shrimp boat") was in Colombia for the purpose of smuggling drugs. The captain, one McCoy, hired Mc Lean-Davis to serve as a crewman and translator. Mc Lean-Davis' responsibilities in port included negotiating the reduction of "fines" imposed upon the shrimp boat by divers Colombian authorities, and helping to procure supplies. In addition, he offered to introduce McCoy to drug suppliers. A young Colombian then joined the crew. The new crew member had been hired by McCoy's Colombian drug supplier, "Ningo" and his henchman, a Frenchman named "Sonny", to serve as a translator. On May 30, 1981, the boat left San Andreas, Colombia. In seeking sailing clearance from the port captain, Mc Lean-Davis filed a false report that the vessel was bound for Aruba, an island where they could not shrimp and in whose waters they could not legally fish. Two days later, a storm smashed the shrimp boat's windshield and disabled the engines, generators and bilge pumps. The boat began to take on water and drifted for two days until a freighter, the POCAHONTAS, responded to her emergency calls. The POCAHONTAS telexed a radio message to Mc Lean-Davis' wife at the request of the BRINNEY LOUISE and towed the shrimp boat to a port where it was repaired. While in port, Mc Lean-Davis twice again filed false reports indicating that the boat's destination was Aruba. The boat thereafter sailed up the Colombian coast where it was met offshore by Ningo (who was in a speed boat) and several small boats filled with marijuana. After the marijuana was loaded on board the BRINNEY LOUISE, the shrimp boat stopped briefly at Riohacha, Colombia, where it took on supplies which the Captain and Mc Lean-Davis purchased in town while they were in the company of Ningo. The boat then sailed to Cape Canaveral in the Middle District of Florida. Mc Lean-Davis and another Colombian were told to hide below decks. After midnight the captain's wife and the respective wife and fiancee of two crew members arrived and took Mc Lean-Davis to Cocoa Beach, Florida. Mc Lean-Davis, who had steered and navigated on the trip, never saw the shrimp boat again.

A few days later, the planners and financiers of the operation agreed with the captain and crew that McCoy would take the marijuana to New York and there receive twenty five dollars per pound for it. Mc Lean-Davis and the second Colombian traveled to Miami where they stayed with Mc Lean-Davis' sister-in-law. In the meantime, Mc Lean-Davis and McCoy stayed in contact by telephone.

In August, 1981, McCoy met Mc Lean-Davis in Miami, invited him to come to New York City to help collect the proceeds of the marijuana sale and bought him an airline ticket for the trip. Mc Lean-Davis then flew to New York City and stayed in a hotel room which had been registered in

McCoy's name. McCoy and Mc Lean-Davis met with associates of the planners and drug suppliers in Central Park. There, Mc Lean-Davis translated for McCoy. Some time later, Mc Lean-Davis flew to South Carolina and, from there, returned to Miami and, six months later, returned to Colombia.

## THE DEFENSE

Mc Lean-Davis raised a duress defense. He testified that the marijuana was loaded on the shrimp boat, without his knowledge, while he was steering the boat thirty miles off the Colombian coast, and he never knew that the voyage had not been undertaken for fishing off Aruba until after the marijuana was loaded. When the boat reached Riohacha, Mc Lean-Davis told Ningo that he didn't want to be on a boat with marijuana but Ningo refused to let him leave. Mc Lean-Davis explained that Riohacha is located in a region controlled by drug smugglers and that any attempt to disobey Ningo's orders might result in his death or the deaths of his wife and children. He explained that he remained in the United States with the expectation that McCoy would honor a promise to allow him to take the shrimp boat back to South American waters for a joint venture in commercial fishing. Mc Lean-Davis denied any knowledge of any meetings with drug dealers and explained his trip to New York as the fulfillment of his desire to see the Yankees play baseball.

## THE APPEAL

On appeal Mc Lean-Davis argues that the district court committed three reversible errors in the admission, exclusion and ordering of testimony, that venue was never proven on the Travel Act count and that he was denied his right to dismissal under the Speedy Trial Act. We shall address these issues *seriatim*.

## A. HEARSAY VIOLATIONS

■ The first alleged error of which appellant complains is the admission, over hearsay objections, of Government's Exhibit 8 which was a copy of a message which was received from the POCAHONTAS in the Coast Guard's operations center in Miami, Florida.

The message, which was introduced in an attempt to show an association between Mc Lean-Davis and "Sonny" reads in pertinent part:

> BRINNEY LOUISE ask me to send a message to Mrs. Clara McClean MSAT I suggest you to send via Cartagena authorities address Carera 42D 83/173 Barranquilla city teleph NR 354630 or 326920 message quote ETA Cartagena 0400 local 8th notify Mr. Sony will need Clara McClean on arrival McClean unquote STOP Master

The testimony shows that the message was sent at the request of crew members of the BRINNEY LOUISE, which did not have a telex, was received and relayed to Miami by a Coast Guard telex station in Puerto Rico. Mc Lean-Davis concedes that exceptions to the hearsay rule cover the request from the BRINNEY LOUISE to the POCAHONTAS and the relay and recording in Puerto Rico and Miami. He asserts, however, that no exception to the hearsay rule covers the transmission from the POCAHONTAS to Puerto Rico. He is mistaken. Rule 801(d)(2)(D) provides the exception.[1] The POCAHONTAS was clearly the agent of the BRINNEY LOUISE for the purpose of transmitting their message. See, *Michaels v. Michaels*, 767 F.2d 1185, 1201 (7th Cir.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).

■ Mc Lean-Davis further asserts that the court should have excluded the evidence as unreliable because there were variations between Government's Exhibit 8 and Court's Exhibit 1, a purported copy of the same telex which was given the defense during discovery. Court's Exhibit 1 reads in pertinent part:

> (3) Subj requested msg to be passed via Cartagena authorities to Mrs. Clara McClean: address Carera 42D 83/173

---

1. Mc Lean-Davis concedes that the Sixth Amendment right to confrontation is satisfied if the evidence falls within one of the recognized exceptions to the hearsay rule. Consequently, we will not address that issue further.

Barranquilla City; Phone NR: 354630 or 326920 briefing her on subjs situation, ETA Cartagena; and *requesting that she notify Mr. Sony as he would be needed upon arrival.* [emphasis added]

Mc Lean-Davis argued at trial, and argues here, that the variation between the exhibits impeached the predicate that the government laid for introducing the evidence under the business records exception to the hearsay rule, Fed.R.Evid. 803(6). The trial judge disagreed saying that the discrepancy affected the weight, but not the admissibility of the evidence. This decision was well within the trial judge's broad discretion. *U.S. v. Veytia-Braun,* 603 F.2d 1187 (5th Cir.) *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1979). The defense was offered the option of introducing Court's Exhibit 1 and arguing the inaccuracy of the document before the jury but declined. We find no reversible error.

### B. EXCLUSION OF EVIDENCE UNDER RULE 403

■ Mc Lean-Davis asserts that the court committed a second error in excluding a transcript of a Congressional hearing on violence and public corruption in Colombia's drug trade to show the sincerity and depth of his fear of retaliation by Ningo, as well as the reasonableness of that fear. The court found that the evidence was excludable under Fed.R.Evid. 403 on the grounds that it would actually (rather than potentially) confuse the jury and unduly extend the trial because the government would need to spend a great deal of time presenting testimony to refute the testimony before Congress or to show that it was irrelevant in Mc Lean-Davis' case. We find no abuse of discretion. There was no showing that Mc Lean-Davis knew the substance of the testimony before Congress at the time he sailed aboard the BRINNEY LOUISE. Therefore, the transcript would have been of little probative value as to his duress at that time. See, *United States v. Stanfa,* 685 F.2d 85, 89 (3d Cir.1982). The judge was entitled to consider that the introduction of the transcript would lead to a monumental waste of time. *Bob Maxfield,*

*Inc. v. American Motors Corp.,* 637 F.2d 1033 (5th Cir.) *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981) (Unit A, binding).

### C. ORDER OF TESTIMONY

■ Mc Lean-Davis argues that the district court committed plain error in informing him, at the close of his testimony, that he would have to submit to further cross-examination if he called a witness in his favor. We find no possible constitutional violation or other plain error in the judge's exercise of discretion to control the order of proof at trial. *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 S.Ct. 460 (1984). *U.S. v. Lippner,* 676 F.2d 456 (11th Cir.1982). The case which Mc Lean cites in support of his argument, *U.S. v. Hill,* 655 F.2d 512 (3d Cir.1981) is inapposite. In *Hill* the defendant was faced with a choice of abandoning either his Fifth Amendment right not to testify or his right to assert a defense of incompetency. *Id.* at 514–15. No such thorny choice was raised in this case. We find no error.

### D. VENUE

■ Mc Lean-Davis asserts that there was no proof of venue in the Middle District of Florida as to Count 9, the Travel Act violation. To the contrary, the evidence shows that he flew from Miami, in the Southern District of Florida to New York City. The geographic limits of the Middle District of Florida lie between the two cities. Therefore, the jury could infer from the evidence that Mc Lean-Davis passed over and through the Middle District of Florida. This evidence was sufficient to prove venue. *United States v. Davis,* 666 F.2d 195, 200 (5th Cir.1982) (Unit B); *United States v. Durades,* 607 F.2d 818, 820 n. 1 (9th Cir.1979).

### E. SPEEDY TRIAL

■ Finally, Mc Lean-Davis argues that he was denied his rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., because the trial court excluded from its computation delay caused by codefendants from whom he had obtained a severance and with whom he had been improperly joined

under Fed.R.Crim.P. 8. We find no merit in his argument because it seeks to exclude perseverance delay without a showing either (1) that the codefendants were improperly joined in the four counts upon which Mc Lean-Davis was tried or (2) that the activities of the codefendants which caused the delay were not related to the same four counts. See 18 U.S.C. § 3161(h)(7).

### CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.