37 F.3d 1507
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge VALENZUELA-RUIZ, Defendant-Appellant.
 No. 93-50567.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1994.
Decided Oct. 13, 1994.
 
 Before: BROWNING, FARRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jorge Valenzuela-Ruiz (Valenzuela) asserts that the district court erred in refusing to permit him to present expert testimony of his predisposition to commit the crimes of possession of heroin with intent to distribute and conspiracy to possess with intent to distribute. Valenzuela claims the expert supports his contention that he was entrapped by a government informant. Under Federal Rule of Evidence 702, the district court must determine whether the expert testimony will assist the trier of fact in drawing its own conclusions as to the fact in issue.[1] United States v. Rahm, 993 F.2d 1405, 1411 (9th Cir.1993). "In United States v. Amaral, 488 F.2d 1148, 1153 (9th Cir.1973), we outlined [the] criteria [used] to determine the helpfulness of expert testimony: 1) qualified expert; 2) proper subject; 3) conformity to a generally accepted explanatory theory;[2] and 4) probative value compared to prejudicial effect." Id. at 1409.
 
 
 3
 Here, the district court found that Valenzuela's proffered evidence would not help the jury. The psychologist's report concluded that Valenzuela suffers from opioid dependence, which made him susceptible to inducement. Under the "proper subject" portion of the test for admitting expert testimony, the focus is on "whether the expert testimony improperly addresses matters within the understanding of the average juror." Rahm, 993 F.2d at 1413. There is nothing unusual about the effects of chemical dependency that an expert must explain to a jury.
 
 
 4
 The jury was aware of Valenzuela's heroin dependency. It was up to his attorney to argue the effect of that dependency on his ability to resist government coercion, if any. As the district court said:
 
 
 5
 Basically, if I were to allow her to testify in this case, in any case in which we have an addict who is dependent on a narcotic, for whatever reason--in this case it's because he is in pain--then that would be a reason that the defendant, that a defendant is susceptible to inducement.
 
 
 6
 And I feel that that's treading on very dangerous ground. I find that if the jury hears evidence of his addiction--and you can argue that because of that, that's why he did it--I mean that's the bottom line.
 
 
 7
 Excerpts of Record at 50. The district court did not abuse its discretion by excluding the expert's testimony because it would not be helpful to the jury. See United States v. Benveniste, 564 F.2d 335, 339 (9th Cir.1977).
 
 Brady Violation[3]
 
 8
 After the second trial, Valenzuela moved the court for dismissal arguing that the government failed to turn over Brady material gathered during an interview with Valenzuela's codefendant, Jose Carmen Saldana-Ledesma (Saldana). Valenzuela argues that the district court should have used its supervisory powers and dismissed the indictment against him because the government suppressed Brady materials and mischaracterized evidence. Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963).
 
 
 9
 To support his contention, Valenzuela provided a declaration by Saldana stating what information he had related to the government during the interview. The government asserts that it received no Brady materials during the interview.
 
 
 10
 At a post-trial hearing on the motion for dismissal, Saldana's attorney testified that Saldana's declaration did not accurately reflect the information that Saldana related to the government during the interview. At this hearing, the district court questioned the accuracy of Saldana's declaration and found that much of what it provided was inadmissible.[4] The district court ruled that the government had no obligation to reveal any of the statements either in writing or orally. The district court also concluded that the contents of the interview were not exculpatory, and even if they were exculpatory, they were not material because they would not have affected the outcome of the trial.
 
 
 11
 Also, many of the statements are inadmissible hearsay. He states what Valenzuela told him. To be material under Brady, the undisclosed information must be admissible. See United States v. Monroe, 943 F.2d 1007, 1011-13 (9th Cir.1991).
 
 
 12
 Moreover, when "a defendant has enough information to be able to ascertain the supposed Brady material on his own, there is no suppression by the government." United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991). Because Valenzuela allegedly told Saldana much of this information, Valenzuela, by definition, had sufficient knowledge of the information.
 
 
 13
 The district court did not err in concluding that the information in Saldana's declaration was not Brady material.
 
 
 14
 Valenzuela asks us to review the district court's denial of his motion to downward depart for an imperfect entrapment defense under U.S.S.G. Sec. 5K2.12. We will only review a district court's discretionary denial of a motion to downward depart if the defendant can show that the decision was made under an erroneous belief that the district court lacked the power to depart. United States v. Jackson, 986 F.2d 312, 314 (9th Cir.1993). Here, the district court did not indicate that it thought it lacked the authority to downward depart; rather, it implied it had the authority by simply denying the motion:
 
 
 15
 THE COURT: I have considered the entrapment defense from the very beginning of this case. I have listened to all the evidence. I never approved of the conduct of the--all of the conduct of the informant in this case, but I have denied the motion of government misconduct in this case.
 
 
 16
 I have allowed the jury to hear whether, in fact, Mr. Valenzuela was entrapped. They decided that he was not. They heard all of Mr. Valenzuela's testimony. They heard all of the informant's testimony.
 
 
 17
 As far as coercion is concerned, or duress, I guess this is part of your imperfect entrapment argument, and I guess you are saying that the conduct of the informant was sufficiently coercive to warrant a downward departure pursuant to 5K2.12. And I am denying a downward departure on that basis.
 
 
 18
 And as far as the entrapment defense, I, frankly, thought very long and hard about this. You are asking for a four-level downward adjustment, I believe. Is that correct?
 
 
 19
 [VALENZUELA'S ATTORNEY]: That is correct. Your honor, that is what is in the recent case, United States v. Garza Juarez. The court approved a four-level downward departure pursuant to section 5K2.12.
 
 
 20
 We believe that the confidential informant did, indeed, take advantage of Mr. Valenzuela. We believe that is facially apparent, whether the confidential informant would admit that or not.
 
 
 21
 THE COURT: What is the government's position?
 
 
 22
 [THE GOVERNMENT]: The government's position is as set forth in the papers submitted by [co-counsel], your honor. That is, in a nutshell that the defendant is not entitled to the court in its--the jury in its wisdom, essentially, has denied this, so there is no entrapment. We believe that that should go as far as no imperfect entrapment that they are relying upon for this downward departure.
 
 
 23
 THE COURT: I guess in Garza that court found that the agent was the one that pursued the defendant for months, at least for a long period of time, and he was persistent in contacting the defendant over a long period of time.
 
 
 24
 As in looking at the facts of that case and looking at the facts in this case, they are very distinguishable. So, therefore, the motion the [sic] denied as far as the imperfect entrapment and also the coercion....
 
 
 25
 Excerpts of Record 158-59. Nothing in this colloquy suggests that the district court was acting under a belief that it lacked the power to downward depart. The district court exercised its discretion in denying this motion. We will not review this discretionary decision. Jackson, 986 F.2d at 314.
 
 
 26
 Valenzuela's conviction and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Federal Rule of Evidence 702 provides:
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 [2]
 The Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993), may have overruled this part of the test. The Court acknowledged that the Frye test had been superceded by Federal Rule of Evidence 702. Under Frye, the expert's testimony had to be based on scientific testing that met with "general acceptance in the particular field." See Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923). The Court reasoned "[t]he drafting history [of Rule 702] makes no mention of Frye, and a rigid 'general acceptance' requirement would be at odds with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to 'opinion' testimony." Daubert, 113 S.Ct. at 2794 (quotation omitted). Because we do not rely on this part of the test, we do not explore the distinction, if any, between "accepted explanatory theory" and "general acceptance in the field."
 
 
 [3]
 Some of Valenzuela's assertions rely on evidence (the informant's rap sheet) that the government failed to provide to him before his first trial, but which he had prior to his second trial. Errors that occurred before his first trial but which were cured before his second trial are moot because the only remedy for these errors is a new trial, which he already received. Brady v. Maryland, 373 U.S. 83 (1963); United States v. Bagley, 473 U.S. 667 (1985). Therefore, we do not reach errors claimed in regard to the first trial
 
 
 [4]
 Specifically, Saldana's declaration indicates that during the interview, he told the government that Valenzuela did not have access to a large amount of drugs and that Valenzuela did not sell drugs. However, this information is not exculpatory because what Valenzuela did or did not do in general does not answer whether he conspired to sell drugs on the occasion at issue. Therefore, this information is not Brady material